We'll start right away with United States v. Cooper, 21-2074. Counsel. Thank you, your honor. The issue presented for review is did the district court abuse its discretion in denying defendants motion for compassionate release? In that the extraordinarily harsh conditions at MDC Brooklyn where the defendant was being housed. And secondly, the court erroneously assessed the history and characteristics of defendant by not giving account to his nonviolent nature, his love of family, his industriousness and ambition, his remorse. The district court talked about many of those factors. That's right, Judge, but there's no evidence. So when you say by not fully accounting for those... What I'm arguing, Judge, is that there's no evidence in the record that he actually took into account any of those factors in denying the motion for compensation. But other than, what other than mentioning those factors could we look to to determine whether or not the district court considered those factors? Well, Judge, I take your point and agree with it that that is where the law is. But the law is, has a little bit of pause to it and a little bit of caution to it. And it is the U.S. v. Fleming. This case, and I'll quote from it, we continue to believe that no specific verbal formulation should be prescribed to demonstrate the adequate discharge of the duty to consider matters relevant to sentencing. Yes, but when there is a specific verbal formulation... All right, but here's my point. As long as the judge is aware of both the statutory requirements and the sentencing range or ranges that are arguably applicable, and nothing in the record indicates misunderstanding about such materials or misperceptions about the relevance, we will accept that the requisite consideration has occurred. Well, that's precisely what we have in this case. We have a misunderstanding in the pre-sentence report. What suggests that there was a misunderstanding on the part of Judge Dury? Well, in the pre-sentence report which Judge Dury adopted, stated at paragraph 59 on J.C. 206, quote, the guideline sentence is the term of imprisonment required by statute, which is a minimum of seven years and a maximum of life. This misstates the sentencing guideline, which is 2K2.4b. 2K2.4b points out that the guideline sentence for a 924C conviction is the minimum term of imprisonment, that is 84 months. But how does that show that he didn't consider the conditions at the MDC when that was the subject of ongoing discussion both before the sentencing and also was brought up again at the sentencing? I mean, just because he didn't say the magic words at the right time, the record certainly suggests that he was fully aware of the conditions at the MDC. I believe he was aware of the conditions at MDC and we're not arguing that. What we're arguing is that there's no evidence in the record that he in any way used the conditions at the MDC in setting the sentence at the original sentencing. Doesn't the record indicate that he went down to the mandatory minimum rather than the 10-year recommendation in part because of the conditions at the MDC? The record doesn't indicate that at sentencing he did that. And that's really our argument. And if you take a look at the plumbing case. But you agree that at some point the record indicates that he did do that and he just didn't repeat that at sentencing? I don't. Judge, there's absolutely no evidence in the record that in establishing the sentence that he considered the conditions at MDC in coming down. In denying the motion, he considers that. Yes, he does consider that in denying the motion. He overtly talks about that. And Mr. Cooper has now moved from MDC, correct, or previously? Yes. I'm sorry, Your Honor. He is no longer there. He's at FCI Fort Dix. Right. Right. And what do we make of that? Well, I don't think that's relevant at all because, you know, he suffered mightily at MDC Brooklyn, and I've outlined that in my brief. He's certainly entitled to a sentencing reduction that he moved for from that time period. So, you know, he received an 84-month sentence, and he's arguing for an 18-month reduction as a result of the suffering that he endured, which was not only from the conditions from the power outage at MDC Brooklyn, where inmates had to live for two weeks in sub-zero freezing temperatures, and also the effects of the pandemic, which included lockdowns and the fear and apprehension of gaining the COVID virus from conditions that did not allow proper isolation. How long has he been in prison? I think he's been in almost for five years at this point. Five, out of his seven-year term. Yes, that's right. Okay. Any further? Yes. I know you've, well, you have no rebuttal. Okay. That's right, Judge. I just want to point out that the relevant law here is we have to show extraordinary and compelling reasons, right, and also the standard of review is abuse of discretion. And, of course, it's a broad standard of discretion, but what is abuse of discretion has been defined by a number of cases in the Second Circuit. One is its erroneous view of the law, or clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions. I would argue here that we have an erroneous assessment of the evidence and that is Judge Geary's failure to actually take into account the conditions that Mr. Cooper complained of in his pro se motions at MDC Brooklyn. And also, there was an erroneous view of the law, as I've just described in the pre-sentence report that misstated the sentencing guideline. Okay. Thank you. Thank you very much. All right. Thank you, Judge. We'll hear from the Governor. Good morning, Your Honors. May it please the Court. Eric Silverberg on behalf of the United States. I'll begin with the issue of the MDC. Judge Geary sentenced the defendant in the middle of a pandemic, and the conditions of the defendant's confinement were issues that were raised before sentencing, during the sentence, and after sentencing. Before sentencing, they were raised in a pretrial motion for temporary release because of COVID, and that's at Appendix No. 73-84. And there were substantial exhibits that were submitted in support of that application, some of which are at pages 85-104. At sentencing, it was raised. Both defense counsel and the defendant raised the conditions of confinement as bases for leniency, which, of course, as Your Honors have already noted, the defendant received, having been sentenced to the mandatory minimum of seven years, when probation recommended ten years. They recommended ten years because of the violent nature of the criminal conduct and because the sentencing guidelines didn't account for the defendant's conduct. Was it clear to me what the guideline range would have been absent the mandatory minimum? The mandatory minimum became the effective guideline range. Was there a calculation done before without regard to the mandatory minimum? Your Honor, I'm not aware of what the calculation would have been without regard. However, I think it's safe to assume that it would have been hotter than the statutory minimum of 84 months. And, of course, this was an issue of probation that was in on, just given the nature of the conspiracy that the defendant was part of, not only acting as an enforcer for a heroin distribution operation, and that was, of course, the nature of the offense to which the defendant pleaded, but also acting as a middleman in brokering heroin sales throughout, primarily in Maryland and elsewhere, and receiving thousands of dollars for this conduct. And his guidelines didn't account for those things. That's why probation said ten years is the appropriate sentence, and Judge Siri gave him seven. But this is all— But he's asking for an 18-month discount. Yes, Your Honor, which I think—so looking at the law and whether Judge Siri abuses discretion in denying the motion for compassionate release and not going any lower than the mandatory minimum which Congress prescribed, I think it's clear both on the facts and the law, including, of course, because Congress has set the mandatory minimum for this sort of conduct at seven years. Well, on a motion for compassionate release, the court could go below the mandatory minimum. Isn't that—do you agree with that? I agree with that, Your Honor. That's a theoretical possibility. Of course, Your Honor. However, as Your Honors are well aware, the 3553A factors look at a number of considerations, including promoting respect for law. And so I think it's certainly a relevant consideration that Congress has set the mandatory minimum for this conduct at seven years. And as Your Honor noted earlier, I think it's indisputable, even though I don't have the exact guideline calculation in front of me, what it would have been if the other context was part of it. I think it's indisputable on this record. Well, I'm not sure it's indisputable. I mean when someone says the de facto range, which is I think the phrase that Judge Deere used, is seven years, to me that implies that the range would have been below. But because of the mandatory minimum, it becomes the mandatory minimum. So I'm not sure why you say that it's indisputable. I guess what I'm—I take your point, Your Honor. What I'm getting at is that probation has acknowledged that the guidelines very well could have been higher or that the guidelines weren't accounting for other conduct that Judge Deere found at sentencing because he adopted the findings of the PSR after the defendant withdrew any objections to the conduct that's outlined in that document. So as I was saying earlier, the conditions of confinement were raised before sentencing, during sentencing, and as Your Honor is aware, Judge Deere was not required to say— I'm not aware of another judge who has reduced—on a motion for compassionate release, who has reduced a sentence solely because of the conditions at MDC and no other— Judge Etkin saying that these are just terrible conditions. Did either of them then go on to reduce or grant compassionate release because of that? I'm glad you brought up that point because those were both—both of those decisions were sentencing decisions. So Judge Etkin and Judge McMahon were saying, I'm looking at the conditions at MDC, and so whereas I otherwise would have given you X, I'm giving you X minus whatever the number was because I'm looking at this. And Judge Deere is saying in his order, denying for compassionate release, I thought about that issue at the time of sentencing. And again, the conditions of confinement were raised at sentencing by both counsel and the defendant himself. So I think that part of my issue, at least, is an issue relating to uniformity. Let's just say hypothetically that every other judge within the Eastern District and or Southern District of New York reduced a sentence as a result of a compassionate release or reduction in sentence motion purely because of the conditions at the MDC. And let's just agree for a moment that those conditions are terrible in the way that Judge Etkin and Judge McMahon suggested. How, Mr. Silverberg, would we assess Judge Deere's decision here? I take it what you'll refer to is probably, you'll probably refer back to the crime itself, the underlying crime. But is there not a concern about uniformity? Yes, Your Honor. And this was an issue that was raised also by Judge McMahon, funnily enough, in the Ramirez decision, which was cited in the government's papers. And if the conditions of confinement standing alone were a basis for a sentence reduction, then, and I quote here, essentially every inmate who has been in BOP custody at any time since March 2020 would be entitled to a sentence reduction. So there are much, as Your Honor is alluding to, there are dramatic consequences if that were solely the basis for a sentence reduction. And I don't believe that my adversary cited any decision that would suggest that one's conditions of confinement standing alone are a basis for a sentence reduction. Turning very briefly in the 40 seconds I have to 3553A factors, ultimately I think this comes down to a disagreement with how Judge Deere weighed those factors. And as Your Honor noted, he specifically mentions in his decision denying compassion release, in consideration, considered the 3553A factors, and I looked at the policy statement, but the defendant's history of violent criminal conduct compels his continued incarceration. Judge Deere, what's interesting about this case, is he actually watched the video of the robbery in this case. That was in the first, it's at, in the transcript of government appendix pages 22 through 37. He watched it. He knew what the crime was. So in my remaining time, unless there are any further questions, I'll rest on my papers. Thank you very much. We will reserve the decision.